787 P.2d 1081

David R. BUCHANAN and Joan Buchanan, husband and wife, Plaintiffs/Appellants,

v.

SCOTTSDALE ENVIRONMENTAL CONSTRUCTION AND DEVELOPMENT COMPANY, INC., an Arizona corporation; Peter J. Merlino and Margaret Merlino, Defendants/Appellees.

David R. BUCHANAN and Joan Buchanan, husband and wife, Plaintiffs/Appellants,

v.

WESTERN TECHNOLOGIES, INC., an Arizona corporation, Defendant/Appellee.

Nos. 2 CA–CV 89–0099, 2 CA–CV 89–0100.

Court of Appeals of Arizona, Division 2, Department B.

Oct. 3, 1989.

Reconsideration Denied Nov. 14, 1989.

Review Denied March 6, 1990.

286

Fennemore Craig by John G. Ryan, Timothy Berg and Diane M. Evans, Phoenix, for plaintiffs/appellants.

Douglas & Brown by William H. Douglas, Phoenix, for defendants/appellees Scottsdale Environmental Const. and Peter J. and Margaret Merlino.

Weltsch, Santerre, Vande Krol & Green by Michael L. Green, Sean D. Clancey and Greg Jones, Scottsdale, for defendant/appellee Western Technologies, Inc.

## OPINION

LIVERMORE, Presiding Judge.

Defendant Scottsdale Environmental Construction and Development Company owned land in a development known as Clearwater Hills. In order to make one of these lots suitable for residential construction, it hired defendant Western Technologies, Inc., to advise it on how to put fill on that steeply sloping lot. That advice was not only technical but also required that a soils engineer supervise the installation of fill. Scottsdale initially followed that advice, and was supervised by Western during a portion of the fill. The remainder of the job was finished without the supervision of a soils engineer. In January 1981, plaintiffs David and Joan Buchanan agreed to purchase the lot subject to a further soil test. Scottsdale hired Western to do that test. Western represented that the lot was suitable for residential construction but added that it made no representation about potential settlement. Neither Western nor Scottsdale informed the Buchanans that Western had initially told Scottsdale that a soils engineer had to supervise all the installation of fill. The Buchanans then hired Western to advise them about site preparation. Western made a number of recommendations but again disclaimed any representation about settlement. The Buchanans built a house; the land on which it was built subsequently settled, causing extensive damage to the house. They sued Scottsdale for breach of an implied warranty and both Scottsdale and Western for negligence and negligent misrepresentation. They now appeal from an adverse summary judgment. We reverse.

Scottsdale argues that there is no implied warranty that a lot sold for residential purposes is fit for the purpose of building a residence. They rely on those cases holding that no implied warranties exist in the sale of raw land. *E.g., Formento v. Encanto Business Park*, 154 Ariz. 495, 744 P.2d 22 (App.1987). We view this situation as fundamentally different. Scottsdale did not simply sell raw land as a homesite. It actually constructed the homesite. Had it built a house on the site, the warranty implied by law would have extended both to the house and the land on which it was built. *Columbia Western Corp. v. Vela*, 122 Ariz. 28, 592 P.2d 1294 (App.1979). If one constructing homes is required to warrant fitness of both the house and the land on which it is built, we see no reason why one constructing a homesite should not be required to warrant that it is fit for the purpose for which it is sold. In this circumstance, the public policy considerations—that sellers hold themselves out as skilled and that buyers are not generally knowledgeable about land characteristics—that underlie the warranty required of homebuilders are equally appli-

cable to site builders. *Richards v. Power-craft Homes, Inc.,* 139 Ariz. 242, 678 P.2d 427 (1984); *Rusch v. Lincoln–Devore Testing Laboratory, Inc.,* 698 P.2d 832 (Colo. App.1984). For those same policy reasons we believe any attempt by the seller to disclaim by contract the liability imposed by law to be void. *Nastri v. Wood Bros. Homes, Inc.,* 142 Ariz. 439, 690 P.2d 158 (App.1984).

■ We also believe the facts described above, if proven at trial, would support negligence and negligent misrepresentation claims against Scottsdale and Western. Evidence was presented that Scottsdale built a defective lot and sold it for residential purposes, omitting to mention that it had not followed expert advice during the construction of the lot. In addition to other expert evidence that Western fell below the appropriate standard of care for a soils expert, it represented that the site was suitable for residential construction. Its careful exclusion of any opinion about possible settlement of the land does not affect this result. To us there is a world of difference between the statement "you can build a house if you take the following steps (we express no opinion about settlement)" and the statement "because we cannot tell whether there will be settlement, we cannot say that you can safely build a house." *See Woodward v. Chirco Construction Co.,* 141 Ariz. 514, 687 P.2d 1269 (1984); *Formento v. Encanto Business Park,* 154 Ariz. 495, 744 P.2d 22 (App. 1987).

The judgment is reversed. The Buchanans are awarded their attorneys' fees for that portion of the appeal relating to the implied warranty against Scottsdale in an amount to be determined upon the filing of the statement required by Rule 21, Ariz.R. Civ.App.Proc., 17B A.R.S.

HATHAWAY and LACAGNINA, JJ., concur.