Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2017 CO 23**

**No. 15SC1089, <u>Forest City v. Rogers</u>—Implied Warranty of Suitability—Privity of Contract—Implied Warranties.**

In this case, the supreme court considers whether privity of contract is necessary for a home buyer to assert a claim for breach of the implied warranty of suitability against a developer.  The supreme court concludes that because breach of the implied warranty of suitability is a contract claim, privity of contract is required in such a case.  Here, the home buyer was not in privity of contract with the developer and thus cannot pursue a claim against the developer for breach of the implied warranty of suitability.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

### 2017 CO 23

**Supreme Court Case No. 15SC1089**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case Nos. 14CA63 and 14CA797

**Petitioners/Cross-Respondents:**

Forest City Stapleton Inc., a Colorado Corporation and FC Stapleton II, LLC, a Colorado limited liability company,

v.

**Respondent/Cross-Petitioner:**

Tad S. Rogers.

**Judgment Reversed**
*en banc*
April 17, 2017

**Attorneys for Petitioners/Cross-Respondents:**
Brownstein Hyatt Farber Schreck, LLP
Hubert A. Farbes, Jr.
Jonathan G. Pray
David B. Meschke
  *Denver, Colorado*

**Attorneys for Respondent/Cross-Petitioner**
Hamilton Faatz, PC
Clyde A. Faatz, Jr.
Frank J. Morroni
  *Greenwood Village, Colorado*

**CHIEF JUSTICE RICE** delivered the Opinion of the Court.

¶1     This case requires us to determine whether contractual privity is necessary for a home buyer to assert a claim for breach of the implied warranty of suitability against a developer. We hold that, because breach of the implied warranty of suitability is a contract claim, privity of contract is required in such a case. Here, because the home buyer did not have contractual privity with the developer, he may not pursue a claim against the developer for breach of the implied warranty of suitability.

## I. Facts and Procedural History

¶2     In 1990, after Denver determined that it needed a new airport, a group of citizens formed the Stapleton Redevelopment Foundation to develop the former Stapleton International Airport. The Stapleton Redevelopment Foundation created a master plan to convert the former airport site into a pedestrian-centric, mixed-use development. In 1995, the private, nonprofit Stapleton Development Corporation ("SDC") was formed to lease and sell the former airport property. SDC selected Forest City[1] as the master developer for redevelopment of the property.

¶3     As the master developer, Forest City subdivides the land into lots and sells the lots to builders. The builders in turn construct and sell houses on the lots. Although Forest City does not build the homes, it selects the builders and styles of homes that can be built on each individual lot to maintain a desired architectural and design aesthetic

---

[1] Before any new structures were built, Forest City Enterprises, Inc., incorporated Forest City Stapleton, Inc., as a subsidiary to subdivide former Stapleton International Airport land into individual lots to create a new residential development. Then another entity, FC Stapleton II, LLC, would sell individual lots to residential builders. At trial, the two entities were treated as one. For simplicity, we refer to the entities collectively as Forest City.

for the Stapleton community. It also reviews whether proposed homes will be consistent with the applicable design guidelines for the development.

¶4 Forest City sold the vacant residential lot at issue here to a professional home builder, Infinity Home Collection at Stapleton, LLC ("Infinity"), with whom Respondent/Cross-Petitioner, Tad Rogers, had contracted to build a home. When Infinity purchased the lot from Forest City, the lot was vacant, did not have utilities, and still needed to be graded to its final configurations. Rogers paid Infinity an extra fee to include a basement that could later be finished.[2] Rogers ultimately purchased the lot and the home from Infinity. The home included a foundation drain system designed to collect ground water into a sump pit and to pump that water into the yard by way of a sump pump.

¶5 After Rogers moved into the home, he noticed that the sump pump was discharging frequently. Rogers hired engineers to investigate and discovered that the ground water level was higher than he had believed it to be. He believed that the high water table beneath his house, coupled with calcite leaching from the recycled concrete aggregate base course used to construct the roads, caused a buildup of calcite in the foundation drain around his house. In turn, this water and calcite buildup makes his basement uninhabitable and causes his sump pump to run and discharge more water

_____

[2] The parties dispute the extent to which Forest City exercised control over whether and how a basement in Rogers's house would be built and whether Forest City assessed the suitability of Rogers's lot for a home with a basement. However, resolving this dispute is irrelevant to the question of whether privity of contract is required before a buyer of a home can sue a developer for breach of the implied warranty of suitability and whether privity existed between Forest City and Rogers.

3

than expected. Rogers sued Forest City, alleging claims including breach of the implied warranty of suitability, nuisance, and negligent misrepresentation.[3] As relevant here, Rogers's breach of the implied warranty of suitability claim alleged that Forest City impliedly warranted to him that his lot was suitable for a home with a finished basement, when in fact it was not. The jury rendered a verdict in favor of Rogers's breach of the implied warranty of suitability claim, as well as his claims for nuisance and negligent misrepresentation.

¶6 Forest City appealed. The court of appeals in a split decision held that the implied warranty of suitability can exist between a developer who sells a vacant lot and a homeowner who is not the first purchaser of that lot. Rogers v. Forest City Stapleton, Inc., 2015 COA 167M, ¶ 1, __ P.3d __. However, it also held that it was unable to determine whether such an implied warranty existed in this case because the trial court did not properly instruct the jury, and the jury did not make the relevant factual findings. Id. It then remanded for a new trial. Id. at ¶ 23. The court also concluded that the evidence was insufficient to support the jury's verdict on the nuisance claim. Id. at ¶ 2. Forest City and Rogers both filed petitions for certiorari, and this court granted certiorari.[4]

---

[3] Rogers also separately filed a suit against Infinity. That case was initially stayed pending arbitration and later dismissed without prejudice pending the resolution of this action.

[4] We granted certiorari to review the following issues:

1. Whether privity of contract is required before a buyer of a home can sue a developer for breach of the implied warranty of suitability.
2. Whether the court of appeals erred in holding that an implied warranty of suitability can exist when a developer sells a vacant lot to

4

## II. Analysis

¶7      The threshold question in this case is whether contractual privity is necessary for a home buyer to assert a claim for breach of the implied warranty of suitability against a developer. We hold that, because breach of the implied warranty of suitability is a contract claim, privity of contract is required to prevail on such a claim.[5] Because Rogers did not have contractual privity with Forest City, he may not pursue a claim against Forest City for breach of the implied warranty of suitability. Consequently, we do not need to address the remaining issues presented on certiorari.

### A. Standard of Review

¶8      We review questions of law, including whether privity is required for an implied warranty of suitability claim, de novo. See Magill v. Ford Motor Co., 2016 CO 57, ¶ 11, 379 P.3d 1033, 1036.

---

     a third party who, without any participation by the developer, builds a home on the lot and sells it to the home buyer.

     3. Whether the court of appeals misstated the instruction for an implied warranty as a matter of law between a developer and the buyer of a home.

     4. Whether the court of appeals disregarded the jury's determination that a warranty was implied by conduct.

[5] We recognize that in contracts that are intended to benefit and give rights to third parties, these third parties may enforce a contractual obligation without being a party to the contract or without being in privity of contract with the actual parties. See S K Peightal Engineers, LTD v. Mid Valley Real Estate Sols. V, LLC, 2015 CO 7, ¶ 7, 342 P.3d 868, 872 ("A third-party beneficiary is a 'person not a party to an express contract [who nevertheless] may bring an action on the contract if the parties to the agreement intended to benefit the [third party and if] . . . the benefit claimed is a direct and not merely an incidental benefit of the contract.'" (alterations in original) (quoting Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co., 874 P.2d 1049, 1056 (Colo. 1994))); see also 17A Am. Jur. 2d Contracts § 414. However, because this issue was not raised by the parties, we decline to reach it.

## B. Implied Warranties Generally

¶9 When parties enter into a contract, they make a series of promises. If a party fails to perform any of these promises, a court may enforce them, either for specific performance or for a money judgment. One type of promise parties make is called a warranty. Specifically, a warranty is "an express or implied promise that something in furtherance of the contract is guaranteed by one of the contracting parties." Warranty, Black's Law Dictionary (10th ed. 2014). Express warranties are usually written on the face of a contract or created by the overt words or actions of one party. Id.; see also Express Warranty, Black's Law Dictionary (10th ed. 2014). By contrast, implied warranties are those promises not explicitly made by contract, but nonetheless enforced by courts. Implied Warranty, Black's Law Dictionary (10th ed. 2014). They "arise by operation of law because of the circumstances of a sale, rather than by the seller's express promise." Id.

¶10 Over time, Colorado courts have recognized a series of implied warranties. Such warranties in the construction context include the implied warranty of habitability and the implied warranty of suitability. See, e.g., Duncan v. Schuster-Graham Homes, Inc., 578 P.2d 637, 638–39 (Colo. 1978) (holding that a claim for breach of the implied warranty of habitability was available to a home buyer who bought a home that was previously sold and repurchased by the builder but suffered from defects caused by a drainage problem); Rusch v. Lincoln-Devore Testing Lab., Inc., 698 P.2d 832, 835 (Colo. App. 1984) (holding that the implied warranty of suitability existed between the developer and the home buyer). By their very nature, these implied warranties are

6

contractual obligations, and thus breaches of these implied warranties give rise to contract claims. See Cosmopolitan Homes, Inc. v. Weller, 663 P.2d 1041, 1042 (Colo. 1983) (noting that the implied warranty of habitability is a contractual obligation). We have clarified that an action for damages for breach of such warranties "involves the relations between the parties arising out of contract." Carpenter v. Donohoe, 388 P.2d 399, 401 (Colo. 1964). Thus, a claim for breach of an implied warranty is a contract claim and must therefore be analyzed according to contractual principles.

¶11 Privity of contract between parties has long been a touchstone of contract causes of action. Stated simply, privity of contract requires that one must be a party to the contract to enforce a term in the contract or an implied warranty arising out of the contract. See G.H. Treitel, The Law of Contract 538 (8th ed. 1991) ("[A] person cannot acquire rights or be subject to liability arising under a contract to which he is not a party."). This requirement has been relaxed under a variety of modern laws and doctrines such as strict liability and some implied warranty theories. See Privity of Contract, Black's Law Dictionary (10th ed. 2014). Notably, in Colorado, the legislature has eliminated the privity of contract requirement in implied warranty cases involving the sale of personal property by extending implied warranties to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the implied warranties. § 4-2-318, C.R.S. (2016) (adopting Alternative B in Uniform Commercial Code § 2-318); see also § 4-2-102, C.R.S. (2016) (stating that the Uniform Commercial Code applies only to the sale of goods, but not of real property). The Supreme Court of South Dakota noted that, in the implied warranty context,

7

eliminating strict privity of contract makes sense because "[a]n implied warranty would be of little use if it did not, in the case of personal property, extend beyond the manufacturer's buyer." Brown v. Fowler, 279 N.W.2d 907, 910 (S.D. 1979). The South Dakota court also aptly pointed out, however, that this rationale does not apply when land or a dwelling is sold, especially in cases where the damage is purely economic. Id.

¶12 Apart from the legislative exception in section 4-2-318, Colorado courts have continued to require privity of contract between parties in breach of implied warranty of habitability cases. See, e.g., H. B. Bolas Enters., Inc. v. Zarlengo, 400 P.2d 447, 450 (Colo. 1965) (holding that in an action for breach of the implied warranty of habitability by a builder-vendor of newly constructed building, privity of contract was required); Cosmopolitan Homes, 663 P.2d at 1043 (limiting the contractual protections of the implied warranty of habitability to first purchasers).

¶13 Because breaches of implied warranties—such as the implied warranty of habitability and the implied warranty of suitability—implicate contract claims, requiring privity of contract in these cases is consistent with upholding the distinction between contract claims and tort claims. See id. at 1042 ("An obligation to act without negligence in the construction of a home is independent of contractual obligations such as an implied warranty of habitability."). While a contractual obligation may give rise to a builder's "common law duty to perform the work subject to the contract with reasonable care and skill," this does not "transform the builder's contractual obligation into the measure of its tort liability arising out of its contractual performance." Id. at 1043. Rather, contract claims require different proof than tort claims and should be

8

treated separately. Id. at 1045. In particular, a tort claim for negligence is "not limited by privity of contact." Id. at 1043. Instead, foreseeability determines its scope. Id. at 1045. Thus, recognizing the necessity of privity of contract for breach of implied warranty claims is consistent with the boundary between tort and contract claims.[6] See Town of Alma v. AZCO Constr., Inc., 10 P.3d 1256, 1259 (Colo. 2000) (adopting the economic loss rule, which provides that a party who suffers only economic harm may recover damages for that harm based only upon a contractual claim and not on a tort theory, such as negligence or strict liability, in order to "maintain the boundary between tort law and contract law").

## C. Implied Warranty of Suitability

¶14     Colorado courts have long recognized a series of implied warranties in the construction context. Specifically, the implied warranty of suitability was first addressed by the court of appeals in Rusch, which held that when "a commercial developer improves and sells land for the express purpose of residential construction, an implied representation to a purchaser arises that the property is suitable for the residential purpose for which it is sold." 698 P.2d at 835. The court specified in Rusch that this type of implied warranty has three elements: (1) land is improved and sold for a particular purpose; (2) a vendor has reason to know that the purchaser is relying upon the skill or expertise of the vendor in improving the parcel for that particular purpose;

---

[6] As discussed, contractual privity is not required for breach of implied warranty claims for which the legislature has eliminated the contractual privity requirement, such as claims for breach of implied warranties for the sale of personal property. See § 4-2-318.

and (3) the purchaser does in fact so rely. <u>Id.</u> The court of appeals again addressed the warranty of suitability in <u>Beeftu v. Creekside Ventures LLC</u>, 37 P.3d 526, 528 (Colo. App. 2001), and suggested that the implied warranty of suitability is a subset of the implied warranty of habitability. But neither case addressed the question of whether privity of contract is required in order for a party to make a claim for breach of the implied warranty of suitability.[7]

¶15    To determine whether privity of contract is required for a home buyer to sue a developer for breach of the implied warranty of suitability, we must recognize that, like other implied warranties, the implied warranty of suitability is by its very nature a contract claim. Additionally, this warranty involves the sale of real property and therefore any legislative elimination of the privity of contract requirement as outlined in section 4-2-318 is not applicable. Instead traditional contractual theories apply, which include the requirement of privity of contract.[8] Therefore, for a home buyer to bring a breach of the implied warranty of suitability claim against a developer, the parties must be in privity of contract.

¶16    Here, Rogers and Forest City were not in privity of contract because they were not both parties to the same contract. Rogers contracted with Infinity, not Forest City,

---

[7] Though neither case addressed the issue of privity of contract directly, it should be noted that in <u>Rusch</u>, a warranty of suitability was found where there was privity of contract between the home buyer and the developer. 698 P.2d at 835. In contrast, in <u>Beeftu</u>, there was no privity of contract between the home buyer and developer, but the court of appeals did not address the issue of privity and instead noted that even assuming an implied warranty of suitability could exist, the plaintiffs failed to prove all of the <u>Rusch</u> elements for an implied warranty of suitability. 37 P.3d at 528.
[8] <u>See</u> <u>supra</u> note 5.

to acquire the lot at issue and to build and purchase his home. Therefore, because Rogers was not in privity of contract with Forest City, he is not entitled to pursue a claim against Forest City for breach of the implied warranty of suitability.

¶17     This conclusion is consistent with the principles underlying implied warranties in the construction context. Specifically, implied warranties in this context are premised on the disparity in knowledge and expertise between the seller and the ultimate home buyer. For example, in Duncan, this court described that the purpose of imposing the implied warranty of habitability is to afford "home buyers protections from overreaching by comparatively more knowledgeable builder-vendors." 578 P.2d at 638. Similarly, in Rusch, the court of appeals determined that a purchaser of an improved lot who is not a professional builder is in a comparable position to a purchaser of a new home "because of the disparity of expertise between the vendor and the purchaser and because many of the alterations [made to the lots] are necessarily invisible from the surface." 698 P.2d at 834–35. Thus, in that case, an implied warranty of suitability existed between the developer and the purchaser, who was both the builder and the home buyer. Id. at 835. In each of these cases, based on the seller's role, the seller was in a better position than the home buyer to know of and assess potential defects.

¶18     In this case, by contrast, Infinity, not Forest City, had superior knowledge and expertise as to the building of the basement at issue. Forest City did not participate in the building or selling of the home. Instead, Infinity, a professional builder, improved and finished the lot, built a house on it, and sold the house and the lot to Rogers. Therefore, the policy rationale for imposing an implied warranty between a developer

11

and a home buyer does not exist when, as here, a developer sells a lot to a professional builder who in turn improves the lot and sells it to a third-party home buyer. In circumstances such as these, there is no reason to presume that a disparity exists in sophistication between the developer and the professional builder, that the professional builder was in a worse position than the developer to know of and assess potential defects in a lot, or that the professional builder would rely upon the developer—rather than its own investigative resources—to provide lots suitable for the builder's intended purposes.

## III. Conclusion

¶19 We hold that, because breach of the implied warranty of suitability is a contract claim, privity of contract is required to assert a claim for breach of this warranty. Because Rogers did not have contractual privity with Forest City and he did not assert a claim based on a third-party beneficiary theory of contract, he may not pursue a claim against Forest City for breach of the implied warranty of suitability. Accordingly, the judgment of the court of appeals regarding Rogers's implied warranty of suitability claim is reversed. We remand to the court of appeals for further proceedings consistent with this opinion.